The judges of the United States Court of Appeals for the Fourth Circuit. Please be seated. Our next case is Coleman versus Kendall. Mr. Brooker. Are you going to introduce our counsel today? All right. John Harris. We're here at UNC law and we have Alexander Paul. All right, so according to my sheet is Lawson you're going to do the opening argument. And Mr. Harris the rebuttal. All right, awesome. Here from you. Thank you. Good morning, your honors. As I said, I'm Alex Lawson from the UNC Clinic Council for Appellant Blair Coleman. So we're here today because combat veteran Sergeant Coleman has been denied his proper retirement disability rating due to the PDR's misapplication of the law. Arbitrary and capricious rating decision that was improperly upheld by the district court when they granted. Now, Sergeant Coleman is a combat veteran who served honorably in Iraq. He witnessed some of the horrors of war, including a deadly rocket attack where a fellow airman was dismembered. This traumatic event led Sergeant Coleman to experience nightmares, intrusive memories and panic attacks. I know you didn't read this here, but you did talk about it quite a bit in the trial below. I think we have to make an assessment initially as a jurisdiction. Why don't you speak a bit on jurisdiction and why it is that this is not a matter that should be for the court of federal claims? Yes, your honor. I can speak only briefly to this. We're not prepared to argue this in greater depth simply because we agree with the lower court's finding that Sergeant Coleman is seeking retirement status and not necessarily retirement pay. So this court does have jurisdiction under the APA. So, well, I understand your agreement, but jurisdiction doesn't matter. We have to independently determine that. You agreed on some facts there, which we may or may not agree with. But certainly something to be said here as to whether we do have jurisdiction. There are a lot of cases of this out there. But if you want to proceed, I mean, see, but I think that ought to be at least presented first as whether we even have jurisdiction of this, because it looks like you easily could say the Tucker Act, this is something that should go there because there's some initial money damages here. Notwithstanding the retirement waiver, do you think? Sure. Again, I'll just say briefly. That's my understanding. He has waived retirement pay. That is correct. Yes, Sergeant Coleman has waived retirement pay. So at this time, we're only seeking retirement status and the non-monetary benefits associated with that status. All right. So we're here because we are challenging the PDBR's determination that Sergeant Coleman has a 10 percent rating after the end of his time on the TDRL. Now, the PDBR is a court that is a board that Congress created specifically to address a systematic unfairness of the system where service members and veterans like Sergeant Coleman were being denied their retirement status and given unfairly low disability ratings. The PDBR's mandate was to review these ratings and where warranted adjust them upwards. So in the interest of conserving your time, why don't you go right directly and tell us what you say they did wrong? Yes, Your Honor. So the PDBR misapplied the law in this case. They did not properly apply 4.129 in its 38 CFR 4.129 in its entirety, as well as ignored 10 U.S.C. 1210, the law that governs the TDRL. Now, both of these laws require a physical examination in order to make a determination of disability in order to warrant any change in disability determination. So the PDBR first decided that 4.129 does apply to Mr. Coleman's case, and they did properly first place him on the TDRL and set him at 50 percent for a temporary term. I recognize that it looks to me procedurally, he filed an opening brief here, and then it looks like you students then wrote the rebuttal. So back away something. It looks like to me he pretty much conceded that he got that physical exam in February 2006 that he said complied with this 4.29. How do we not take that as a concession? Yes, Your Honor. So it is a bit of a complex issue. And while we agree that the VA exam could serve as a functional equivalent, if you are so inclined, however, we disagree that the VA exam can serve as the legal requirement under 4.129. And the reason it cannot serve as a legal requirement under 4.129 is that... So you're claiming there should have been a later exam, even though the time in question goes back. It goes back in time, which seems to create something of an impossibility or an absurdity to have an exam now that's to establish a condition in the past. In fact, years in the past. Yes. Let me clarify that we are not arguing that we want a sort of a modern or a new exam in order to make a determination of disability back in time. We're talking about a retroactive application and under 1210 and 4.129, a re-examination at the appropriate time is not as necessary. I thought those examinations were permissible, but that they were not mandatory. Do you say that the statute or regulation has a mandatory physical examination requirement? In order to warrant a change in disability rating, yes, we argue that a physical examination is required. And the reason we argue that is, I mean, it's explicit under 1210. If you're looking at 1210A, a physical examination is necessary in order to determine both a service member or veteran's sort of stability as well as their level of disability after their time on the TDRL. But we also believe 4.129, plain reading of 4.129 explicitly states that a physical exam is a conditioned precedent in order to warrant a change in disability determination. So in order to make a change in disability, you must have a physical exam to justify that change. Now, to answer your question about sort of doesn't this create an impossibility, you know, because we're not asking for a new exam. And, you know, we understand that the PDBR can't go back in time and establish some new exam. But just that this exam going back in time is not possible doesn't prevent the proper application of the law. You can apply 4.129 to the extent feasible solely by determining, solely by placing Mr. Pullman on the TDRL and increasing his rating to 50 percent. It is his subsequent reduction from 50 percent that needs to be justified. And there was no justification here because there was no physical exam and that reduction was thus arbitrary and capricious. To continue, you know, I want to address why the VA exam that happened in February cannot be used to justify, cannot be used as a physical exam to satisfy 4.129. It is explicit in the language of 4.129 that the exam must be conducted by the rating agency. And I'd like to mention that we're talking about the old legacy system that was in place at the time in 2005 and 2006. And at the time, the DOD and the separate branches had sole authority. They did not have to agree with the VA, but they were using the VA regulations and guidance similarly to make those similar disability determinations. Now, when the DOD, you know, took that authority in order to make the disability determinations, that goes along with the responsibility to conduct the legally required exams. So in this case, the government did not conduct an exam that was required by the legacy system at that time. And thus, they cannot reduce Mr. Pullman's rating. I also want to mention that the government argues that the PDBR records review could substitute as the exam. We vehemently disagree with that, especially because we're talking about medical determinations of disability. I think a common sense reading is this. This exam needs to be a medical assessment of Mr. Pullman's person and not of his record. You know, when we're talking about the other two exams that are available, there is also some medical evidence from the IPEB and the initial NARSIM and exams that were conducted that determined Mr. Pullman had an unstable mental health condition. So while that evidence can be looked at by the board, because that evidence was generated prior to Mr. Pullman's placement on the TDRL, that can't be used to then justify and understand what his condition was at the end of his time on the TDRL. Now, that's in accordance with 1210 as well that says a physical assessment has happened after his placement on the TDRL. Now, the only other exam that we have available on the record is the VA exam. Now, again, I said that the VA exam was not done by the rating agency. But, you know, if the VA exam were to count, that's the only exam that the PDBR could use to justify its decision. And that VA exam explicitly rated Mr. Pullman at a 30% rating. So the PDBR even said that a 30% looking at the VA exam could say that 30% could be surmised. So the VA not only looked at this evidence a little bit incorrectly, but they also did not use the VA exam to properly justify their reduction of his rating. Now, this is also all in accordance with sort of the purpose of the PDBR. I know the government argued that this sort of outcome might be sort of unusual and against the purpose of the PDBR under 1554A. However, again, the PDBR was created as a board of equity, of fairness, of looking at these ratings and determining whether or not they should only be adjusted upwards. And in this case, the critical determination that 4.129 even applies to Mr. Pullman's case was the critical determination that satisfied the purpose of the PDBR. Not to mention they did change his rating to up to 50%, again, well within the purpose of the PDBR. These sort of systematic low ratings for the veterans were unfair. And so the PDBR satisfied the purpose with its decision. In addition, I want to briefly mention that in the PDBR's report, the PDBR explicitly stated that 30% could be surmised looking at the evidence in front of it, namely the VA C&P exam. Now, when there is a question of... 30% indicated he was experiencing symptoms. Doesn't it require more than that to actually cause the occupational decrease? I'm sorry. In other words, the 30% that you alluded to indicates that he was experiencing those symptoms. But it seems that the symptoms must also cause an occupational decrease in the work efficiency in the mid-periods of the ability to perform the occupational test. So, is there not a difference between experiencing and causing when you're talking about the 30% rating? Sure. So, to my understanding, when you are looking at sort of 4.130, the main disability rating regulation, the ratings are not just about symptoms. They are also about a level of social and occupational impairment. Now, Mr. Pullman, you know, he sought out VA care himself. He was not required to do so, and he did that because he needed the support at the time. So, I think it's clear to say he was experiencing these symptoms. But the rating itself does talk about social and occupational functioning. Not to mention that the PDBR's report referencing the VA exam said that the 30% is due to social and occupational functioning. The sentence itself links the functioning to the 30%, not just the symptoms. So, we're looking at a kind of a holistic. So, you know, in this case, Sergeant Coleman was both sort of legally unstable. He had a qualifying mental health condition that, you know, required application of 4.129, and he was experiencing symptoms of a downward decline. He was at 0% coming into the Air Force, ended up at 10% in October 2005, and then his downward decline was then supported by the VA decision. All right. Have you got anything else for us? No, Your Honor. Thank you for your time. All right. Thank you very much. We'll hear from Mr. Harris on rebuttal. Ms. McClain? Thank you. Good morning, Your Honor. Caroline McClain for the United States. May I please report? Why don't you start with Judge Wynn's question about jurisdiction? Sure. Thank you, Your Honor. We preserved at the district court level the objection to the magistrate judge's recommendation that there was the court lacks subject matter jurisdiction that Mr. Coleman should have brought his claim under the Tucker Act. But you did brief him. We did not at the appellate court level because we did at the district court level concede that once Mr. Coleman waived military retirement pay when we were last at this court, that under Kidwell, the D.C. Circuit decision, that it has a more plaintiff-friendly approach to whether or not a plaintiff is asking for equitable or just monetary relief, that it was a tougher decision, a tougher question. So we did not brief it at this court. Whether or not you briefed him, we still have to establish jurisdiction at every stage. Correct, Your Honor. The government maintains that because the statute providing for Mr. Coleman's retirement, 1201, was money mandating, despite his waiver, he was not able to waive himself out of asking essentially for monetary relief. So there's a claims, court of claims decision, the Smith case, that goes the other way on this, the Smith v. United States case, and then below, you argued that Kidwell's standard was the wrong one. So are you changing your mind here? Your Honor, I'll be honest, I'm not familiar with the Smith case you're referencing. Can you remind me of the holding? You can check it out later. Suffice it to say, there's a court of claims case that goes directly against this. It indicates that jurisdiction is a problem. It's a court of claims case, but that's where it would go if, in fact, we didn't have jurisdiction. But you did argue below that the Kidwell standard was the wrong one. So I'm just asking, you now say it is the right standard that we apply? No, I don't think it's the right standard to apply. We merely acknowledge at the district court level that under Kidwell, once Mr. Coleman waived his monetary relief, it was a tougher question, but we do not believe that Kidwell is the correct standard to apply in the circuit. Moving on to the board's decision, the board acted reasonably. There was nothing arbitrary or capricious about its decision making or the ultimate decision that it reached. The board did exactly what it was supposed to do here, which was review the informal physical evaluation board that Mr. Coleman received at the time of his original separation. And to do that, the Department of Defense required the board to do three things. It required the board to not only review that original decision, but the entire case record underlying it. It also required... The Council seems to argue that there's an additional physical examination requirement that did not occur at the proper time, and therefore everything after that essentially is void. I don't know if that's your understanding of the argument or not, but that's what I took from it. My understanding of the argument was that when the board applied Section BASRA 4.129, so when it retroactively changed Mr. Coleman's disability rating for a retroactive period of six months, subject to a subsequent examination, that my colleagues are arguing that that examination had to be a physical examination. But as they also acknowledged, and as the court has acknowledged, that would be impossible. And additionally, the regulation does not require a physical examination. It requires an examination. And that examination occurred in the form of a retroactive records review, which was of course all the board as a board of review could do in the situation. What other type of examination would it be? The examination that occurred, Your Honor, a record review of an examination of 1554A statute that creates the board. When Congress created it, it said that it is to examine and evaluate the original medical evaluation report. To do that, it is to look at the record, well, and then the Department of Defense in implementing statutory intent issued regulations that say, this is what the board is supposed to do. It's supposed to look at that evaluation and the case record underlying it. What does it mean when you add schedule and evaluate the examination? I got you. You just say conducting an examination, but this is schedule and examination. In the context of the military, where this type of rating is, I guess, when you get out, you initially get this rating. It seems to me, of course, I didn't even know this, having been a military guy myself, that each service seems to have different requirements in terms of the ratings. The Air Force has a particular one to follow, but it seems at least in 4.129, this language of schedule and examination is harder. I don't think so, Your Honor, because an examination was arguably scheduled in this case at the end of the retroactive period of the Vassarate. Is that the February 2006 examination you're talking about? I'm talking about the board's examination of the records, which ended on the amended date of the separation at the end of that retroactive six-month period. It included in its examination evidence from that February 2006 examination, but we are not contending that that is a physical examination, that the board could somehow have required a physical examination. The examination occurred. It was a records examination. So, in this circumstance, you're using, essentially, review as the equivalent of examination statute or regulation? We are, Your Honor, and that's what Congress called the board of review when it created it, a board of review, and that's the examination that took place. The board applied the Vassarate correctly in the way that it could because it, of course, could not go back in time. The second thing the board did was what it was also required to do, which was to compare Mr. Coleman's original physical evaluation board rating with the subsequent rating of the VA in February 2006 and consider the variance between the two in arriving at its ultimate recommendation. And it did this. The board's record of proceedings carefully lays out the evidence from the original separation and that medical evaluation and then also evidence from the subsequent VA examination. The board literally cites portions of that examination. The board then explained exactly what it was doing. It said at the end of the retroactive six-month period, all board members unanimously agreed that a 50% rating was not met. So, the question the board grappled with was whether a 10% or a 30% rating applied. And it acknowledged, as my colleague mentioned, that there was evidence in the VA rating to support a 30% recommendation. I think actually its acknowledgement of that shows the honest journey the board was taking. However, it also cited evidence from both the original separation examination and the VA examination six months later that supported its ultimate conclusion of a 10% rating. Some of that evidence that is laid out in the board's record includes evidence from the mental status examination the VA conducted in February 2006. I'll mention some of it here. Mr. Pullman was then experiencing some startle reaction, minimal isolation, occasional nightmares and intrusive memories, though the intrusive memories were both good and bad, and they were getting better. His memory and concentration was okay. His energy level was fairly good. He denied significant problems with depression. He described himself as fairly anxious, but the examiner noted his attitude was alert and oriented. He was neatly groomed and dressed. He was behaving normally. His cognitive memory was within normal limits and his judgment was good. He denied homicidal or suicidal ideations, flashback or depression. These are pieces of evidence the board explicitly referenced in its discussion. The question before the district court under the appropriate standard of review, which the district court correctly applied, was whether or not there was a rational connection between the facts that the board found and observed and the ultimate choice it made. There was, and the district court correctly determined that the board's decision should be sustained for that reason. The board acted reasonably when it did not. The district court correctly found that the board acted reasonably when it did not order a physical reexamination because that examination would not have been relevant to the board's inquiry of Mr. Pullman's status at separation, his ability to perform the occupation at the time the board needed to make its decision. The district court also was correct. Let me ask you, Congress only said a record-based examination. To what extent did we look at what DOD reports with 4.129 and this temporary disability retirement list that it then brings in? Don't we have to consider those requirements too? Yes, Your Honor, you do. The DOD in requiring the board to implement 4.129 was also acting consistently with what Congress required. In 2008, not only did Congress create the Board of Review, but it also, in the National Defense Authorization Act, required the military to apply 4.129. So, the DOD in requiring the board to apply 4.129 was acting consistently with what Congress was mandating the military to do. This was, of course, in the form of a retroactive records review, but it was consistent with congressional intent. The district court was correct to decide summary judgment here on the administrative record. This was, I think, Mr. Pullman's second point in his appeal because summary judgment is the appropriate vehicle for district courts to decide questions or agency review actions under the Administrative Procedures Act. This court has held that a party challenging an agency action bears a special burden for demonstrating that the court should reach beyond the record to examine things that should have been for the agency and weren't. We would argue that Mr. Pullman has not met his burden here to support a remand to the district court for the creation of post hoc evidence that many years later would have no bearing on the decision the Board of Review made and the decision it was reviewing at the original time of the separation. If there are no more questions from the panel. No questions. All right. Thank you very much. Mr. Harris, you have some rebuttal time. Thank you, Your Honor. Good morning. My name is Will Harris, and I'm counsel for appellant Blair Coleman. So I'd like to first discuss a few points raised by the court and then discuss a few of our own points, if time permits. So, first of all, Your Honor, the impossibility of the exam has been brought up several times. We'd like to address that again. When you read the statutes and regulations altogether, the impossibility of the exam does not present a problem. And the law can be followed. The PDBR can fulfill its purpose, given the impossibility of the exam. That is because based on 10 U.S. 10 U.S.C. 1210, 1210A and 1210B provide two different ways off of the TDR. 1210A requires physical examination, and 1210B says that if for whatever reason an exam is not done, then after five years the disability must be considered permanent. And that is the service member's disability rating from that point on. And this shows that Congress contemplated a situation in which for whatever reason an exam is not given. And I just wanted to address that outright, because the impossibility of the exam makes it a little bit difficult to see that there's a clear legislative and regulatory path that makes sense and that follows all the regulations. Another issue I'd like to bring up that my co-counsel briefly mentioned but didn't get to quite fully explain is 4.3 and 4.7 of the Bastard Deed. 4.3 is the reasonable doubt provision. And it says essentially that when the government says those arguments are waived. Your Honor, we respectfully disagree. I thought you would, but tell us why. Well, Your Honor, first of all, it's not a question of issue preclusion. Our argument from the very beginning has been that the government was arbitrary and capricious because they did not follow the Bastard Deed properly. 4.3 and 4.7 are seminal parts of the Bastard Deed. They're interpretive canons. Did you argue those to the district court? We did not argue them specifically, Your Honor. We recognize that. However, the PDBR report itself mentions 4.3. And so we think that even if Your Honors believe that that issue has been precluded, there are various exceptions to the issue preclusion rule. And we think that under basically all these exceptions, this court should consider those arguments. Because the government was aware of 4.3 as evidenced by the it showing up in the PDBR report. And frankly, it's just a very right. But if you didn't argue that district court, then neither the government or the court was on notice that you thought that was a legal argument. Well, Your Honor, again, I'd just like to say our argument from the very beginning has been that the government did not follow the Bastard Deed. And we acknowledge that we did not specifically mention 4.3 and 4.7. However, we think that the fact that we did not go into detail enough briefing shouldn't preclude Mr. Coleman from receiving the remedy that he's entitled to in this case. I'd like to move on, Your Honor, to the question brought up by Your Honors regarding whether the exam must be a physical exam. We think that, again, when you read all the when you read these statutes and regulations together, the only logical outcome is that a physical exam is required. As you mentioned, Judge Wynn, 4.129 requires that the rating agency, which in this case is the Air Force, must schedule an examination. We think that the only plain reading of that regulation is that a physical examination is contemplated. Again, under 4.129, the physical examination is required to determine whether a change in visibility rating is warranted. The government properly applied 4.129. They acknowledged that they were required to. They placed Mr. Coleman at 50 percent for six months, but did not satisfy the condition precedent for changing his disability rating from that point on. It's about this language in the opening brief that says, Coleman underwent an examination that is the functional equivalent of a temporary disability retired list re-examination on February 22, 2006. That date fits within the, it goes on to say that this is a quote from the brief itself. It fits squarely within the reevaluation period. That seems to be a concession to me, but as I indicated and alluded on, I understand if a UNC student's got a hold of this and you wrote them a copy, you seem to have written around it without really dealing with that concession. Well, Your Honor, we think that the distinction between the functional equivalent and the legal equivalent is an extremely important one here. How is it different? Well, the functional equivalent, we can see that it's the functional equivalent because were the Air Force to have conducted the examination, they would be using the same schedule, the same VA schedule for rating disabilities. They would be looking at the same evidence. And so we think in that way, it can be seen as the functional equivalent. However, it is not the legal equivalent as evidenced by 4.129, where we're specifically requiring the rating agency to schedule the examination. The rating agency in this case is the Air Force. And so the VA examination under the plain reading of that regulation cannot count as the legal equivalent of the examination. I'd like to move on to a few points discussed by the government. And this truly goes to what we've been calling the 10 versus 30 argument, whether Mr. Coleman, when they were looking at his disability rating, whether 10 or 30 was the more appropriate rating. The government noted a bunch of symptoms. They looked at the PDVR report, noted a bunch of the 30 percent symptoms, and then basically refuted that evidence with old, stale evidence from outside the TDRL period. Furthermore, the government from the PDVR report noted Mr. Coleman's generally intact social and occupational functioning at a 30 percent rating. They also said that a 30 percent rating could be surmised looking at the evidence. All of that evidence, the generally intact social and occupational impairment, that is a 30 percent rating, looking at 4.130, which is the schedule for what rating corresponds with what symptoms. And so the government themselves noted in the PDVR report symptoms consistent with a 30 percent rating. And we think that further underscores the arbitrarily and capricious nature of their decision. Your Honor, I'm out of time. All right. We appreciate the arguments of both counsel, and the court wants to express its appreciation to the students in the program for undertaking representation in this case. It serves a vital function for our system to operate, and we gratefully acknowledge it. So we will come down and greet counsel and then move on to our last case.
judges: G. Steven Agee, James Andrew Wynn, Henry E. Hudson